FILED
CLERK

1:00 pm, Mar 06, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALEX HERNANDEZ, individually and
on behalf of all others similarly
situated,                                    MEMORANDUM & ORDER
                                             21-CV-04518 (JS)(ST)
     Plaintiff,

        -against-

RNC INDUSTRIES, LLC; ROBERT
DUGAN; and RICHARD TONYES,

     Defendants.
----------------------------------X
APPEARANCES

For Plaintiff Alex          Avraham Y. Scher, Esq.
Hernandez:                  James Patrick Peter O'Donnell, Esq.
                            Roman M. Avshalumov, Esq.
                            Helen F. Dalton & Associates, P.C.
                            80-02 Kew Gardens Road, Suite 601
                            Kew Gardens, New York 11415


For Defendants RNC          Christopher A. Smith, Esq.
Industries, LLC; Robert     Trivella & Forte, LLP
Dugan; and Richard          1311 Mamaroneck Avenue, Suite 170
Tonyes:                     White Plains, New York 10605
```

SEYBERT, District Judge:

Plaintiff Alex Hernandez (hereafter, "Plaintiff") brings this putative class action against Defendants RNC Industries, LLC, Robert Dugan, and Richard Tonyes[1] (hereafter, "RNC," "Dugan," and "Tonyes" respectively; collectively "Defendants") alleging:

---

[1] Robert Dugan and Richard Tonyes are sued in their "individual capacities." (See Compl., ECF No. 1.)

(1) failure to pay overtime wages in violation of the Fair Labor Standards Act (hereafter, "FLSA") and New York Labor Law (hereafter, "NYLL"); and (2) failure to provide written notice of payrates, wage statements, and "other information" as required by NYLL. (Compl. ¶¶ 48-64.) On February 4, 2022, Defendant moved to compel arbitration and stay or dismiss the complaint (hereafter "Motion to Compel"). (See Motion to Compel, ECF No. 16.) For the reasons that follow, Defendants' Motion to Compel is GRANTED and this case is hereby STAYED. To the extent Plaintiff has any plausible claims against Defendants, those claims are to be brought properly before an arbitrator.

BACKGROUND

The Court presumes the parties' familiarity with the factual and procedural background of the case and recites the facts only as necessary to adjudicate the pending motion.

The parties dispute when Plaintiff began working for RNC. Plaintiff alleges he began working for RNC "from in or around March 2018 until in or around September 2020." (Compl. ¶ 8; Pl's Decl., ECF No. 22-1, ¶ 3.) Defendants contend Plaintiff did not begin working at RNC until one year later, in May 2019, as evidenced by the I-9 and pay rate notice forms executed on May 22, 2019. (Reply, ECF No. 28, at 8; Exhibit A, ECF No. 28-1 attached to Arguetta Decl.) On May 22, 2019, the same date Plaintiff executed his I-9 and pay rate notice forms, Plaintiff executed a

2

"Receipt of Employee Handbook Form" which stated, both in English and in Spanish, in pertinent part:

> I received and read a copy of the Employee Handbook. I understand that the rules, policies, and benefits contained in the Employee Handbook may be updated, modified, or deleted at any time and that it is my responsibility to keep myself appraised of any changes. <u>I also understand that this handbook contains a mandatory arbitration provision with a class action waiver and that by accepting and/or continuing my at-will employment I agree to the binding arbitration provisions set forth in this handbook.</u>

(Receipt of Employee Handbook Form, ECF No. 18-1, at 74, <u>attached to</u> Tonyes Decl. (emphasis added).) The Receipt of Employee Handbook Form contained no other information except date and signature blocks where Plaintiff was to, and did, confirm his assent to the contract's terms. (<u>Id.</u>)

The arbitration provision in the Employee Handbook states:

> ARBITRATION OF EMPLOYMENT DISPUTES
> All claims from potential, current or former employees of RNC accruing at any time pursuant to all Federal, State and Local statutory employment statutes including, but not limited to, any claims for monies that may have been owed for back wages, vacation, overtime, prevailing wage or minimum wage claims, including claims under the Fair Labor Standards Act, the New York State Labor Law or similar law, claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the ADA Amendments Act of 2008, the Family and Medical Leave Act, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act, the

3

>      Genetic Information Nondiscrimination Act, the Equal Pay Act, the Worker Adjustment Retraining and Notification Act, and any claims alleging violations of any state or local law, statute, regulation, executive order, or ordinance, including, but not limited to, the constitution and laws of the State of New York, the New York State Human Rights Law and the New York Executive Law (collectively "Covered Claims") must be submitted to binding arbitration before the American Arbitration Association pursuant to the AAA Employment Arbitration Rules and Mediation Procedures then in effect. The costs charged by the arbitrator shall be borne by the Company and not the employee. No party shall have the right to bring or participate in a class, collective or other representative proceeding concerning any Covered Claim in any forum including any court of law or arbitration. To be clear all Covered Claims submitted to arbitration must be handled on a singular individual basis.

(Employee Handbook, ECF No. 18-1, at 20-21, attached to Tonyes Decl.)

Plaintiff maintains he was never provided with the RNC Employee Handbook and he did not know "that such a handbook even existed." (Pl's Decl. ¶¶ 13-14.) Rather, Plaintiff recalls signing three documents in May 2019, which RNC personnel told him were "registration-related OSHA documents." (Id. ¶ 11, 26.) He further recalls that two of those documents "contained [his] contact information, and a spot for [him] to write down the individual who had referred [him] to work for RNC" and a third document which "contained a list of all the work and tasks that RNC does." (Id.) Plaintiff also avers "[n]o one told [him] that

4

by signing any of [these] documents . . . [he] would not be able to bring a future lawsuit against RNC," and he was unable to understand the documents he signed because he could not "speak, read, or write in English." (Id. ¶¶ 10, 27; Opp'n, ECF No. 23, at 16.)

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act mandates courts to "direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed." Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213 (1985)). "Where a party to an arbitration agreement refuses to comply with that agreement, and instead attempts to proceed in litigation, the other party may move to stay the litigation . . . and compel arbitration." Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 240 (S.D.N.Y. 2020), aff'd, No. 10-CV-6950, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021). "The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." Nicosia v. Amazon.com, Inc. 834 F.3d 220, 229 (2d Cir. 2016). In determining whether to compel arbitration, a court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) if federal statutory claims

are asserted, whether Congress intended those claims to be non-arbitrable." Daly, 939 F.3d at 421 (citations omitted).

"[M]otions to compel arbitration are governed by a standard 'similar to that applicable for a motion for summary judgment' [such that] a court must 'draw all reasonable inferences in favor of non-moving party.'" Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (quoting Nicosia, 834 F.3d at 229). Thus, "if there is a disputed question of material fact such that the making of an arbitration agreement is in issue," the Court "shall proceed summarily to the trial thereof." Id. (citing 9 U.S.C. § 4) (quotation alterations omitted). In addition, if an alleged party to an arbitration agreement "categorically and specifically" denies signing such an agreement, that evidence is sufficient to create an issue of triable fact as to whether the arbitration agreement is enforceable. Id. However, where no specific denial is made, no issue of triable fact exists. Id. ("When a party merely states that she cannot recall signing an agreement (as opposed to denying that she has done so), such a declaration ordinarily fails to create a triable issue of fact. Likewise, where the facts alleged in a nonmovant's declaration are so contradictory that doubt is cast upon their plausibility, then absent other evidence, granting the motion to compel may be appropriate. Further, a party normally does not show the existence of a genuine issue of fact merely by making assertions that are

6

based on speculation or are conclusory.") (citations and alterations omitted).

## II. Analysis

### A. The Arbitration Agreement Is Valid

The critical question before the Court is whether a valid agreement to arbitrate was executed among the parties. Plaintiff contends he cannot be bound by the arbitration agreement in the employee handbook because: (1) he did not know the arbitration agreement existed so he could not be bound by its terms; (2) he believed the forms he signed were "registration" documents and did not know they would prevent him from bringing claims against Defendants in Court; and (3) he could not speak, read, or write in English. (Opp'n at 14-16.) Defendants argue, in contrast: (1) Plaintiff's signing of an agreement acknowledging he received the Employee Handbook containing a binding arbitration provision gives rise, as a matter of law, to the "conclusive[] presump[tion]" that Plaintiff knew the handbook's "contents and assent[ed] to them"; (2) the arbitration agreement was explicit and contained no temporal limitation; and (3) Plaintiff's claims that he was not aware of the contents of the agreement or was misled as to the contents have no merit because the Receipt of Employee Handbook Form was provided in Plaintiff's native language, Spanish, and Plaintiff has failed to plead with particularity his claims of

7

fraudulent inducement. (Support Memo, ECF No. 19, at 7-10; Reply at 4, 7-10.)

Here, Plaintiff's claims that "to [his] knowledge, none of the documents [he] signed had anything to do with not being able to bring a future lawsuit against RNC" and that Defendants misrepresented the Receipt of Employee Handbook Form to him as "registration-related" documents, are not enough to create a "disputed question of material fact" as to whether the arbitration agreement is enforceable. (Pl's Decl. ¶¶ 26-28); Barrows, 36 F.4th at 49 (quoting Nicosia, 834 F.3d at 229). This is especially true in light of the following circumstances: (1) Plaintiff does not deny signing the Receipt of Employee Handbook Form; (2) the Receipt of Employee Handbook Form clearly and unequivocally states:

> I also understand that this handbook contains a mandatory arbitration provision with a class action waiver and that by accepting and/or continuing my at-will employment I agree to the binding arbitration provisions set forth in this handbook;

(3) the Receipt of Employee Handbook Form was provided to Plaintiff in Spanish, which Plaintiff admits is his primary language; and (4) none of the "registration documents" which Plaintiff signed, and which Plaintiff claims he was misled into signing, fit the description of the Receipt of Employee Handbook Form. (See Opp'n, in toto, and at 8 (lack of denial regarding signing the Receipt of Employee Handbook Form and admitting Spanish is Plaintiff's

8

"primary language"); compare Pl's Decl. at ¶ 11 (describing the forms Plaintiff was allegedly misled into signing as "contain[ing] [his] contact information, and a spot for [him] to write down the individual who referred [him] to work at RNC" and "contain[ing] a list of all the work and tasks that RNC does"), with Receipt of Employee Handbook Form (exclusively containing contract terms in English and Spanish and signature blocks for Plaintiff's name and the date).)

As the Second Circuit instructed, where Plaintiff merely states he "cannot recall" signing an agreement, as "opposed to denying" he has done so, "such declaration ordinarily fails to create a triable issue of fact" as to the enforceability of an arbitration agreement. Barrows 36 F.4th at 51 (emphasis in original). Plaintiff's statement here that, "to his knowledge," he did not sign documents having "anything to do with not being able to bring a future lawsuit against RNC," does not amount to an "unequivocal denial" that any such contract was made; thus it does not create a triable issue of fact as to whether the arbitration provision is enforceable. Id. (citing Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972) ("To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial.")).

9

Moreover, Plaintiff's claim that he did not receive the Employee Handbook referenced in the Receipt of Employee Handbook Form does not create a triable issue of fact as to the enforceability of the arbitration provision because "under New York contract law," Plaintiff "is deemed to have accepted the arbitration policy by continuing to work after being advised" it was his responsibility to "read and understand all of the company policies including the arbitration policy." Brown v. St. Paul Travelers Cos., Inc., 331 F. App'x 68, 69 (2d Cir. 2009); see also Gil v. Bensusan, No. 18-CV-10657, 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) ("[B]ecause [plaintiff] signed an Acknowledgment form stating not only that he received the employee h[a]ndbook, but also that he 'received and read' the Consent to Arbitration policy found within it, [plaintiff's] argument that he did not receive either the handbook or the arbitration policy fails").

Here, as in Brown and Gil, Plaintiff agreed via the Receipt of Employee Handbook Form, that he "received and read a copy of the Employee Handbook" and that "it is [his] responsibility to keep [himself] appraised of any changes [to the policy]." Id.; (Receipt of Employee Handbook Form). Plaintiff further agreed "that by accepting and/or continuing [his] at-will employment [he] agree[s] to the binding arbitration provisions set forth in [the Employee] [H]andbook." (Receipt of Employee Handbook Form.) Plaintiff does not dispute he signed this Agreement, thereby making

10

him responsible for reading, obtaining, and understanding the terms to which he agreed. (See Opp'n, in toto; Pl's Decl., in toto.) Therefore, Plaintiff's argument that his non-receipt of the Employee Handbook somehow invalidates his agreement to arbitrate fails.

Plaintiff's claim that he did not understand the terms of the arbitration provision, specifically, that he did not know he would be giving up his right to sue his employer in Court, is similarly without merit. "Under New York Law, a party will not be excused from his failure to read and understand the contents of a document." Gil, 2019 WL 12334706, at *3 (citing Victorio v. Sammy's Fishbox Realty Co., LLC, 2015 WL 2152703, at *11 (S.D.N.Y. 2014)). Thus, Plaintiff cannot avoid the effect of his agreement to arbitrate by now claiming he did not read or understand the contents of his agreement. Id.

Finally, Plaintiff's claim that he could not have agreed to arbitrate his claims because he "cannot speak, read, or write in English" is unavailing. (Opp'n at 14-16.) It is undisputed that the Receipt of Employee Handbook Form was provided to Plaintiff in both English, and Plaintiff's "primary language," Spanish. (Id. at 8.) It is incomprehensible how Plaintiff, provided with an agreement in his primary language, could somehow avoid the consequences of the agreement by claiming he could not speak a language different than the one utilized in the contract.

11

Indeed, even if, for some reason unbeknownst to the Court, Plaintiff did not understand the terms of the agreement provided in both English and Spanish due to a language barrier, the Second Circuit has explicitly rejected the notion that a language barrier could prevent the enforcement of contractual obligations. See Rodriguez-Depena v. Parts Auth., Inc., 877 F.3d 122, 124 (2d Cir. 2017) (affirming district court order compelling arbitration in FLSA action despite plaintiff's claim that "his ability to read English is limited" because "a language barrier does not prevent the enforcement of contractual obligations"); see also Myskina v. Conde Nast Publ'ns, Inc, 386 F. Supp. 2d 409, 415 (S.D.N.Y. 2005) ("[Plaintiff cannot] avoid her obligations under the [contract] because of her purported failure to read its contents, . . . or because of a language barrier."). Plaintiff's attempt to avoid the application of the arbitration provision based on the purported language barrier thus fails.

B. The Claims at Issue are Arbitrable

Having found the parties agreed to arbitrate, the Court next determines whether the scope of the agreement at issue covers the claims alleged and considers whether Congress intended such claims be arbitrable. Daly, 939 F.3d at 421. Here, the arbitration provision contained in the Employee Handbook states, in pertinent part:

> All claims from potential, current or former employees of RNC accruing at any time pursuant to all Federal, State and Local statutory employment statutes including, but not limited to, any claims for monies that may have been owed for back wages, vacation, overtime, prevailing wage or minimum wage claims, including claims under the Fair Labor Standards Act, the New York State Labor Law or similar law . . . must be submitted to binding arbitration.

(Employee Handbook at 21.) Considering the explicit language of the arbitration provision in the Employee Handbook, it cannot be credibly disputed that Plaintiff's FLSA and NYLL claims fall within the scope of the arbitration provision. See Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 188 (E.D.N.Y. 2006) ("In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute. Doubts should be resolved in favor of coverage.") (citation omitted). Accordingly, the Court finds the claims alleged by Plaintiff are subject to arbitration under the terms outlined in the Employee Handbook.

Finally, it is well-settled that FLSA and NYLL claims are arbitrable. See Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010), aff'd, 408 F. App'x 480 (2d Cir. 2011) ("The Court therefore concludes that Congress did not

intend FLSA claims to be non-arbitrable."); Sutherland v. Ernst & Young LLP, 726 F.3d 290, 297 (2d Cir. 2013) (holding "the FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms"; and noting that, because "[plaintiff's] FLSA claim must proceed individually in arbitration pursuant to the Federal Arbitration Act, so too must her NYLL claim"); see also Torres v. United Healthcare Servs., Inc., 920 F. Supp. 2d 368, 376 (E.D.N.Y. 2013) (concluding "neither the plain language of the FLSA nor its relevant legislative history evidence a congressional intent to preclude employees from waiving their right to bring their FLSA claims as part of a collective action").

Having found there is valid, enforceable arbitration agreement among the parties governing arbitrable FLSA and NYLL claims, Defendants' Motion to Compel is GRANTED insofar as it seeks to compel arbitration of Plaintiff's claims and stay the instant litigation pending the completion of arbitration proceedings.

14

CONCLUSION

For the stated reasons,[2] Defendants' Motion to Compel is GRANTED and this case is hereby STAYED. To the extent Plaintiff has any plausible claims against Defendants, those claims are to be brought properly before an arbitrator. The parties are directed to inform the Court of any resolution of the arbitration proceedings, or any other event that would affect the stay of this matter, within 30 days of such resolution or event.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 6, 2024
       Central Islip, New York

---

[2] To the extent the parties raise any additional discernable arguments not expressly discussed herein, the Court finds them to be without merit.

15